Okay, our next case is Travelers v. Dannem & Co Inc. et al. Mr., excuse me, Mr. Rose, I thought you were already, that's why I was calling you. You were there then you disappeared. Almost, your honor. Good morning, your honor. Mr. Rose, you may proceed. Thank you, your honor. Will you please the court. My name is Robert G. Rose with the firm of Day Pitney, LLP, and I represent the appellant, plaintiff below, International Flavors and Fragrances, your honors. This case brings before this court a significant issue involving the application of the New Jersey Products Liability Act and specifically the definition of what is other property. My client, IFF, purchased vanilla beans that were adulterated, contaminated with mercury. Those chopped vanilla beans were used, manufactured into a new product, vanilla extract. That vanilla extract, after it was discovered to have been contaminated with mercury, could not be sold because of the intentional addition of the mercury to the vanilla beans. Under the New Jersey Products Liability Act, the vanilla beans were the product itself, within the meaning of the act. And the act defines harm as physical damage to property other than to the product itself. And here it was alleged that there was physical damage to other property, to the vanilla extract, and to the production equipment that was used in the manufacturing of the product. Now, one of the central issues that is involved in this case is what constitutes other property. This court and Judge Stapleton, in two opinions, 2J and King, addressed the question of what is other property in the context, I believe, of the Pennsylvania statute and concluded it was the time of purchase. That is, that the time of purchase is the proper test in determining if there was damage to the product itself or to other property. And in those cases, this court had the opportunity of analyzing, initially, one Supreme Court decision and then a second one, first East River and then Saratoga fishing, where the court was applying admiralty law. In determining the distinction between property and the product itself, I should say, the product itself and other property. And in East River and Saratoga, what comes out of those decisions is when a manufacturer places an item in the stream of commerce by selling it to an initial user, that item is the product itself under East River. And that items that are added to the product afterwards, after the initial purchase, those are other property, which, if damaged, would then trigger product liability. Now, this court is required to attempt to determine as best it can what the New Jersey Supreme Court would deal with this issue and how it would deal with this issue. In the absence of a binding precedent by the New Jersey Supreme Court, then case law counsels this court to look at intermediate law. Well, we have two recent appellate division decisions, which came down subsequent to the opinion below. The Dean case and the Marin case. Both of those cases dealt with finished homes that were purchased, and they had what is known as ephesusiding, which permits water to penetrate into the home product. Those two recent opinions by the appellate division apply the same test of purchase test, the time of purchase test. That's also referred to as the product sold test. So, when we look at Dean, Marone, 2J, the decision in King as well, which dealt with potato that had a fumigation, actually they were called seed potatoes, that had a fumigation product, a chemical that caused the potatoes not to be able to germinate. In each of those instances, to determine what is other property, you look to what the purchaser bought. Here, IFF didn't purchase vanilla extract. It purchased vanilla beans. That was the product. The other property was what IFF manufactured from those vanilla beans, the vanilla extract. And in the words of King and 2J, the bargain struck in the transaction with the initial user was the purchase of the vanilla beans. As just Stapleton said in King versus Hilton Davis, one must look to the product purchased by the plaintiff to determine what the product itself is. That was a Pennsylvania case. Yes. But involving the same analysis. And in fact, the New Jersey statute, we're not talking just about common law here, we're talking about the New Jersey Products Liability Act, which was enacted in 1987, uses that express terminology. Here, IFF lost more than the benefit of the bargain. The benefit of the bargain was the purchase of the beans. Those cost IFF a little over a million dollars. What they lost was the value of the vanilla extract that was physically damaged. That was worth more than $4 million. One of the difficulties, I think, you hear about the tyranny of words and how English sometimes gets in the way of resolving issues. One of the problems when you read through the cases is the use of the word economic loss and what does it really mean. Again, Judge Stapleton, in the 2J case, talks about economic loss. And that is loss that is neither physical damage nor damage to tangible property. Loss that is neither physical damage nor damage to tangible property. That's very significant because when you read the cases, you see the frequent use of the word economic loss. Well, we always measure anything by dollars, by money. But when you have damage to physical property, we're not talking about, in this situation, lost profits, loss of the value of the bargain. We're talking about damage to property, physical damage. That takes it immediately outside the concept of economic loss. Isn't it important in looking at the question of economic loss to examine what the New Jersey courts have said about economic loss? It is. And what have they said about economic loss? We go back to the initial decision in Spring Motors and the Supreme Court decision in Alloway. And we've given the rest of the citations to both of those cases. And both of those cases expressly recognize the dichotomy that we're talking about here. They both recognize the distinction between damage to the property itself, which is economic loss, and damage to the other product, which takes it outside the scope of economic loss. Alloway recognized the distinction and said we don't have to reach it in the case. And that dealt with a pleasure boat that had sank where there was no allegation of damage to other property. The boat, when it sank, didn't hit the dock and bring the dock down. Both. But in Alloway, didn't Alloway define economic loss to include direct and consequential damages? Yes, it did. And really aren't you claiming direct and consequential damages? That goes back to the issue that we just attempted to address a moment ago. And that is what is really economic loss? What is the distinction between economic loss as it's properly used and physical damage to other property? If the dock had been damaged by the boat when it sank, there would have been a measurable value in DOBRA terms of the loss of the dock. But that isn't considered the economic loss. That's damage to other property, physical damage to other property. Here there was physical damage to other property, meaning the vanilla extract. Different concept. But what's significant and important is- How does vanilla bean become vanilla extract? The court below actually in its decision quoted our definition. It's a substance that the FDA, under FDA regulations, requires to be a mixture of a certain amount of vanilla extract, a certain amount of water, a certain amount of alcohol, about 35% alcohol actually. And the vanilla beans are put into wire racks that are run through water, hot water process. Alcohol is added and so on. So you come out with a new product. It's not simply liquefying the beans. It is a new product. You acknowledge that you can't get vanilla extract without vanilla beans. Vanilla beans is the starting point. Now, what becomes also clear in 2J, and this gets into the component part cases and how this is not a component part case. It's not a situation where IFF purchased a finished product which had components in it. That were defective. We purchased a single item which we then used to manufacture a new product. So you agree that this case is not a component part case? Our position is that it is not a component part case. One of the great fears in terms of the spread of tort liability would be to change the component part case where a manufacturer or where a buyer buys a finished product. And again, the case law is very clear. You look at what was purchased by the buyer. That is the most significant element in determining what is property and what is other product. You look at the time of purchase. What was the time of purchase? The time of purchase is the proper test in determining if there was damage to the product itself or to other property. Here the product itself that was purchased was the vanilla beans. When under Saratoga and East River, both of those decisions applying admiralty law, make a very clear distinction that then picked up in Judge Stapleton's decisions in 2J and also in King. We look at what the product was purchased. The beans were purchased. In fact, in 2J, the court makes very clear that we're not accepting this notion of integration of product. That is to say, if we start off with vanilla beans as a manufacturer, we then process the beans into vanilla extract. We come out with a new product. We don't look to the vanilla beans as a component that way in the finished product. It doesn't work that way. You look at what was purchased. And that's what the appellate division in New Jersey did recently in the Dean and Malone case. They looked at what was purchased. The purchaser bought a house. The fact that there was defective siding that caused injury to other components in their house, that respectfully, the court said, was not other property. You bought the house. You measure what the product was at the time of purchase. That was the house. I have a significant argument to make with respect to. Well, you saved some time for rebuttal, didn't you? Okay. I did want to address at some point the contractual issue as well. Let me ask you one question so we get it on the table and your friends across the aisle can comment on it. Common law indemnification. They say, even assuming you're right, you say the district court said, well, there is no settlement agreement or court order that these sums were paid in satisfaction of. And you say, well, we had a strict liability and they were paid in satisfaction of that. And your friends say, well, but even if that's the case, even if you were right about that, that the statute of limitations began to run no later than when you paid those and satisfied that obligation. And that your demand letter, original demand letter for those sums was sent in May of 2004, and your suit was not filed until September of 2008. And therefore, it was barred when you tried to insert them by amendment. Now, what do you say to that? The original motion for leave to amend was filed on February 8, 2008. And then after the decision by Judge Shipp, Magistrate Judge Shipp, denying the motion as futile, on September 29th, we then filed a second proposed amended complaint that added the implied indemnification claim, which we then said would relate back under Rule 15A to February 8th. So it would have been within the four-year statute of limitations. We did not argue in this appeal that the six-year statute of limitations applies.  And we say for the purposes of this appeal, it would have been within the four years because it would have related back to the filing on February 8th, 2008. Thank you. You're welcome, Your Honor. Thank you, Mr. Rose. We'll have you back on rebuttal. Mr. Pruding. May it please the Court, Your Honors, Counsel. George Pruding for Cooperative Business International. Your Honors, I will be addressing the product liability claims on appeal on those issues. I'll be followed by Mr. Mergener, who will be addressing the contractual indemnity claims, and finally by Mr. Borowski, who will be addressing some procedural claims. As far as the product liability claims are concerned, the case law interpreting New Jersey law is clear. The economic loss doctrine discounts any tort remedy or product liability remedy in a case that's governed exclusively by the UCC in the sale or transaction of goods. Which case? Merritt-Logan? Is that what you're relying on? I'm relying upon Merritt-Logan as well as the recent cases, Judge Hochberg in the district court below in the IFF versus McCormick. I'm also relying upon a couple of out-of-circuit cases, the Palmetto Fourth Circuit case. Well, we need to follow Merritt-Logan. Absolutely. And Merritt-Logan is consistent with the Palmetto, Linen, and Dakota gas. All right. But I wonder whether Merritt-Logan is apt here. And the reason I ask that is that it appears that Merritt-Logan did not interpret the New Jersey Product Liability Act. My supposition is that the facts at issue at Merritt-Logan occurred prior to the adoption of the Product Liability Act. Is that not correct? Well, that is correct. But even the district court below acknowledged that Merritt-Logan is instructive. All right. But just hold on a minute. So if Merritt-Logan did not interpret the New Jersey Product Liability Act, how can it inform our decision today when we know the New Jersey Product Liability Act governs this case? Because the New Jersey Product Liability Act is based essentially upon restatement of torts as to this concept of harm to other property. And what Merritt-Logan stands for, the proposition of, is when you have a UCC case that governs the commercial transaction and the sale of that allegedly defective good. I believe in Merritt-Logan it was a defective refrigeration system. And as a result of that defective refrigeration system, food spoiled. Other property spoiled. But what they said was see that But we didn't apply the other property rule because we weren't interpreting the New Jersey Product Liability Act. Well, that's correct. But the standard restatement, which is cited by all courts other than Product Liability Act in New Jersey, has that other property exception in it. And what Merritt-Logan stands for, Your Honor, is the proposition that when you have a commercial transaction involving sophisticated parties for the sale of goods, we are not going to allow tort concepts to come in and upset the apple cart. All right. New Jersey needs to answer that question, right? I don't think either side cites a case that tells us. I found two different strains of law. There's the majority rule, which you advocate, which is, look, we're not going to let tort infect what is a quintessentially contract-based remedy. That's correct. And let's face it, if they hadn't blown the statute of limitations, we'd be here on contract, not on these other issues. Absolutely correct. But there's also a minority rule. There's an unreported case from the Ninth Circuit, Texas, and there are other jurisdictions that have this other property exception that allows the blending or the overlap between tort and contract law. How is this Court going to predict which rule New Jersey will follow, the majority or the minority rule? New Jersey would clearly follow the majority rule, and we can take that away from Alloway. For example, Alloway extended spring motors not just to commercial parties, but to non-commercial parties, the buyer of the boat in the Alloway case. In the cases just cited by Mr. Rose, Dean and Marone cases, the New Jersey Appellate Division applied the economic loss doctrine to limit homeowners in their claims against them. Well, that's not other property, though. That's integrated. But, well, that could be interpreted that way, but you could also say, as the plaintiffs did below, that the siding or the EFIS system put on the house was separate. My point being, Your Honor, that if you're asking how New Jersey will interpret this, this is what you're asking. Well, I'm asking how New Jersey will interpret it, and what I'm suggesting is I, speaking only for myself, am not persuaded when you cite cases that involve component parts, because we're just talking about vanilla beans. We're not talking about components within the vanilla beans. I understand, but you're asking how New Jersey, and I'm trying to respond to Your Honor's question. So New Jersey has extended the economic loss doctrine to apply to even non-commercial homeowners, to non-commercial boat buyers. So what we see in New Jersey is a development of the law by the Supreme Court extending, not shrinking back or retreating from the economic loss doctrine. And the bottom line is this. When you read Spring Motors, when you read Alloway, what the court says throughout there is that the UCC is the exclusive remedy because we want, we don't want tort law to carry the water for what would otherwise be contract remedies. And like Your Honor said, we wouldn't be here but for the statute of limitations questions because the UCC provides the full panoply of benefits that this plaintiff would want, consequential loss, indirect loss of the bargain. All of that is there. So what the UCC has done and what the Supreme Court says in both Alloway and Spring Motors is that we want this system to work. We don't want to infect it, if you will, with tort law. We don't want it to drown in a sea of tort as Judge Hochberg said. And I think that's an accurate prediction because what we've seen is an expansion, not a retraction by the New Jersey Supreme Court. So that when we look at things like in remerit, when we look at Palmetto Linen, when we look at Dakota Gas in predicting how the New Jersey Supreme Court would rule on this, they want a predictable, reliable system within which to conduct commerce. We don't want it infected by tort law concepts. The parties, by the way, are free to contract whatever they want in their agreement. But in absence of specific recommendations or contractual provisions, the UCC will apply exclusively. It streamlines it, it makes it a predictable system, particularly in this case we are talking about two sophisticated commercial entities. IFF, a huge producer of flavorings and products that go in everything from Coca-Cola to dryer's ice cream. Dahman, who is a wholesaler of condiments, spices, and things of this nature. They even had a memorandum of agreement in which they said the UCC and New Jersey law of the UCC will govern this. So clearly even the parties, by their own contract, contemplated that this was to be a UCC exclusively governed relationship. Mr. Pruden, you've gone over your time. Why don't we call on Mr. Mirdner. Thank you very much. Thank you, Your Honors. Counsel, may it please the Court, William Mirdner on behalf of Dahman. If I can pick up with the question that Judge Stapleton addressed to Mr. Rose. It sounded to me as though the answer was that the way that you get around that is relating back to the February 8th complaint. And that simply isn't permissible. To put it in context, the procedural history in this case reveals that the February 8th attempt to amend the complaint was the first effort to amend the complaint to assert the UCC contract claims, an amendment which was subsequently, a motion to amend which was subsequently abandoned by the plaintiffs in this case. And then they filed the later motion for the products liability claim. And then again later filed a motion to amend to try to assert what they claim to be contractual compensation claims, which is really an effort to just assert claims that are governed by the UCC. And so the answer is set forth in footnote 5. And the computation that Your Honor laid out I believe is the correct one. And so I actually end up starting with the argument that even if you were to accept any of the other arguments, which we certainly take issue with, with regard to whether you can characterize this as something that it's not, without the support of any case law in New Jersey, this district, or the United States Supreme Court, the statute of limitations was still blown, pure and simple. What do you say to in response to the argument that we had a strict liability that we were satisfying and we only had that liability to a third party, we were satisfying, and it was attributable to conduct of the defendant? Beyond the obvious, more simplistic answers that it wasn't pled and that there were no facts alleged to support it on the record below, there is no indication. Wait a minute. The facts were that there was a sale. Well. It's a strict liability when we sold an adulterated product, we had a strict liability. And the district court said, well, but you can't recover because you're not pointing to a settlement or a judgment. That's a troubling idea because you wouldn't get many settlements if you, I mean. I appreciate Your Honor's point to the extent that you suggest, as the appellant has suggested, that they're not obligated to wait for a claim to be tendered to them in order for it to become a claim. And I'm sure any of us in our, if we were advising someone on that issue, might advise differently. But the record below is devoid of any suggestion that there is a specific requirement that would have obligated them to recall these goods, even under the statute that they now claim would have obligated it. There is no specific showing that that's so. And it was not pled that way. And frankly, again, if you look at the pleadings themselves, it was pled as a garden variety cross-claim for contractual indemnification and common law indemnification and still would be governed by that statute of limitations. And as it relates to the common law indemnity claim, that is a, common law indemnity is, let us not forget, essentially a tort concept, not a contract concept. And although that wasn't articulated, we had to articulate, sometimes the most basic points are the hardest ones to articulate. And we had to actually rely on Black's Law Dictionary, which I have to admit is about the second time I've done that in 25 years. But even more basic than that is that common law indemnity is a tort concept, not a contract concept. And so to the extent that the arguments are made on behalf of the parties as it relates to the tort concepts that are governed by the Product Liability Act, the same would fall as it relates to that. Now, on the more basic point of the claims, these are simply, if you look at the essence of the claims for contractual indemnification, the New Jersey courts are clear on two points. Number one, that they are construed strictly against the party that's seeking indemnification. They are construed strictly against the drafter. Any ambiguities are construed in favor of the party that's resisting them. Those are fundamental principles. And also fundamental is that you have to view the indemnification provisions as a whole. There can be no reasonable dispute that each of the claims that are asserted here, the language of those claims makes it clear you are being asked to defend, you are being asked to indemnify, you are being asked to hold harmless. Those are all concepts that fundamentally and basically require that you are defending against a claim of a third party. The same would be true with the second indemnity clause. And I'm putting aside the concept under angular New Jersey law that if you have multiple indemnity clauses, in and of itself, that creates an ambiguity that bill takes against enforcement of the indemnity clauses. But if you look at the second one, it's very specific as it relates to third party claims. I'll anticipate that Mr. Rose will argue that the district court ignored, which we take issue with and pointed out, the use of the phrase raw materials at the end of the first indemnity clause. Number one, it didn't and the opinion is clear on that. But even if for a moment you accept that it did or it didn't give it sufficient emphasis, that doesn't change the fact that if you look at the beginning of the clause, which you must, that it's still talking about defending and holding harmless against claims for those things, which in essence requires a claim to be asserted against it. And I apologize for belaboring what I think is a fairly straightforward and obvious argument. But a lot of effort has been made to mischaracterize and recharacterize what are essentially UCC claims, nothing different about the language of those than there is in the UCC statutes, and recast them as something other than what they are to avoid the impact of the statute of limitations. And to do so, frankly, at a point in time where the statute of limitations was gone for those claims as well. And as it relates to the suggestion that, I apologize, I lost my thought. Actually, I believe I've indicated everything I wanted to indicate. And my time has gone as it is. Thanks, Your Honor. Thank you. Mr. Barofsky. Thank you, Your Honors, Counsel, Frank Barofsky for Plaintiff Travelers. I want to deviate from the main aspect of the argument on the substantive issues, which I think have been ably addressed by my colleagues on my side of the aisle. And I trust the issue of some of the procedural hurdles to IFF's claim in this case, kind of a Rule 15 analysis, especially with respect to the second motion for leave to amend. And I think it's important to look at the procedural history of the case in order to do so. The district court didn't address these issues, but I think it's important because it does provide an alternative basis for affirmance. Travelers filed a declaratory judgment action in November of 2004. IFF was completed as an interested party, having an interest in the case. IFF filed a motion to dismiss. At the time IFF filed the motion to dismiss, it represented to the court that it was going to file product liability claims. It represented that in an appeal from a report and recommendation by a former magistrate judge who decided the issue. And it also represented that it intended on filing product liability claims with respect to the Traveler's Motion for Summary Judgment. In fact, in Judge Debevoise's opinion on the Motion for Summary Judgment on a coverage issue, the court specifically referred to tort theories and alleged tort and alleged product liability claims as a basis for denying Traveler's Motion. Right around the time, right before Traveler's Motion for Summary Judgment was denied, no affirmative relief was granted to DEMON at that time, but the Motion for Summary Judgment was denied. Right around that time, about three days before the opinion was released actually, IFF filed its first Motion for Relief to amend the complaint. That triggered a tender by DAMEN for travelers to defend that claim in light of Judge Debevoise's denial of the Summary Judgment motion. Travelers wished to preserve its right to appeal and offered to defend that claim under a reservation of rights. DAMEN objected to the reservation. Travelers reiterated the reservation because it was concerned about potentially having to cover contract-based claims. The case, DAMEN didn't accept the reservation. As a result, travelers, DAMEN filed the motion, opposed the motion on the statutory grounds, on the statute of limitations grounds. I'm sorry, I have a lot to say, and it's, I'm trying to say it quickly. Travelers. I'm listening and I'm following all these facts you're telling me, but I have no idea what your point is. The point is basically, travelers settled the declaratory judgment claim with DEMON on the basis that IFF withdrew its contract claims and abandoned them in that representation. That representation carried over into its failure to oppose or to raise that issue in its initial filing when it appealed Judge Schiff's determination on the product liability issues. And then that ultimately triggered travelers' decision to settle. The indemnification claims were submitted subsequent to the settlement after travelers had thought that the contract-based claims that would be uncovered were gone. So the point is travelers acted in reliance upon a representation that the contract claims were gone. Yes. And it would be inequitable or unreasonable for them to be resurrected at this point. You essentially crystallized my argument, Your Honor. Thank you. Is that properly before us? I believe it is. I believe that it was presented before Judge Debevoise. We submitted a certification of the travelers' representative who was involved in negotiating the resolution. And what did Judge Debevoise rule on that aspect of the case? He deemed not to address it because he felt that the substantive issues on futility rendered it unnecessary to address the issue. However, under – And if we agree with him on the substance, we need not consider these procedural barriers that you're raising now. You're offering these as an alternative. That's correct, Your Honor. Okay. Thank you. All right. Thank you very much for asking. Mr. Rose? Thank you, Your Honor. It's ironic that my adversaries talk about products' liability and then go on to say, well, parties have the opportunity to draft their own agreement, deal with these issues as a matter of contract. In fact, we attempted to do that in our memorandum of agreement. There were clauses that dealt with first-party damages. There were clauses that dealt with third-party damages. So if there were no, for sake of this argument, if there were no claim properly brought under the New Jersey Products Liability Act because of the economic loss doctrine, then the parties have the ability under the UCC and as recognized by the New Jersey Supreme Court to draft their own agreement to deviate from the UCC, draft whatever clauses they want as a matter of freedom of contract. Here they did just that. What do you say to opposing counsel's argument that New Jersey would adopt the majority rule? And they cite Alloway and Spring Motors as evidencing the trend toward adopting the majority rule. In fact, Your Honor, and I pulled out my brief, page 24 of our opening brief, cites a quote from Spring Motors, and I'll read that to you, in which it announced the economic loss doctrine and held that a commercial buyer is limited to a UCC remedy, and here's the quote, if the claim is based on intangible economic loss not attributable to physical injury, ellipsis, or harm to a tangible thing other than a defective product itself. And that was a quote from Prosser and Keaton. And then on page 25, excuse me, 26 of our opening brief, Alloway. It's alluding to Spring Motors, the Alloway court reasoned that, quote, when the harm suffered is to the product itself, unaccompanied by personal injury or property damage, then the principles of contract rather than tort should apply. So you have two New Jersey Supreme Court decisions which recognize what we conceive to be the majority view. So the result is trending their way, but the rationale is trending your way, because the rationale in both of those cases was explicit that those did not involve damage to other property. That's correct. What's important there is that the New Jersey Supreme Court, unlike some states, specifically recognized the dichotomy between injury to the product itself and injury to other property, which is then adopted in 1987 in the Products Liability Act. Mr. Rose, in your best version of your cross-claim. Yes. Okay. Yes. What other property do you allege was damaged? I'm giving you whichever cross-claim you want to choose to answer that question. Okay. I guess I should say if you know. I have it. Okay. If you have the appendix handy, but I'll cite to it anyway. I have it. Just bear with me a moment. Okay. With respect to, first of all, the first-party damages, the best paragraph, which is in the appendix on JA 196, it says, quote, seller is liable for any damage to buyer's stocks, equipment, and goods caused by incorrect or insufficient product description of seller's goods. I think that's the best with respect to first-party damages. Okay. There's two other clauses that also address that. That's in JA 196, and that's in the cross-claim. Is that your argument, or is that actually in the cross-claim? The actual language? Yes. I don't believe we used all of the actual language. All right. I have it in the appendix. All right. We'll look at it. Okay. We'll look at it based on that. It was included in the brief below, and Judge — I know it was included in the brief. Yeah. I was asking about the cross-claim. Okay. But, okay. And then with respect to the third-party claim, the best language, also on JA 196 in the agreement, seller shall be responsible for claims by third parties against buyer for loss or damage based on personal injury or destruction of property due to the defects in the product for which the seller is responsible. Mr. Rose, I'm going to ask you one other question. Is there enough law out there from New Jersey that we can easily enough predict what the New Jersey Supreme Court is going to say in regards to the property clause, other property? Yeah. Or should we ask the New Jersey Supreme Court to decide for us what the term other property means? I think there is enough because both Spring Motors and all the way the quotes that I've given to Judge Hardiman make it clear that the Supreme Court has recognized the dichotomy between damage to the product itself and damage to other property. That much is very clear. It's also clear based on the appellate division decisions that just came down recently after the decision blow in Dean and Marone that when you look at the distinction between what is the product itself and what is other property, you look at what was purchased. And that cleared up an ambiguity that might otherwise have existed. So when we look to, as this Court must, precedent, we have two New Jersey Supreme Court decisions that recognize the dichotomy and then you have two appellate division decisions which apply that dichotomy in the context of what product do you look to. You look to the product that was purchased in Dean and Marone, the homes. So I think there's sufficient New Jersey precedent along with the general body of decisions that this Court has done in 2J and in the King case. All right, Mr. Rose. All right. We thank you for Mr. Rose and we thank Kelly's counsel for their arguments and we'll take the matter under advice. Thank you.